UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| BENAFSHA SAIDY FEROZ,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMEX CORPORATION, et al.,<br><br>  Defendants. | Case No. 3:23-cv-05592-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 10 |

**INTRODUCTION**

The plaintiff sued her former employer Commex Corporation, her supervisor Saied Azad, and Commex's CEO Edward Yau, claiming that they did not address her complaints that coworkers were harassing her based on (1) her "race (Asian), national origin (Afghanistan), and religion (Muslim)," in violation of Title VII of the Civil Rights Act of 1964, and (2) age, in violation of the Age Discrimination in Employment Act (ADEA). She alludes to discrimination based on a disability, claims retaliation for engaging in protected action, and alleges workplace injuries and overtime work. The harassment forced her to resign her employment. Commex withheld her final paycheck.[1] The defendants moved to dismiss the complaint on the grounds that (1) the individual defendants cannot

---

[1] Compl.– ECF No. 1 at 3–10, 22. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 23-cv-05592-LB

be personally liable under Title VII, and the plaintiff in any event did not exhaust her administrative remedies against the employer, (2) the plaintiff did not plausibly plead discrimination, retaliation, or wage-and-hour claims, and (3) any workplace injury claims are barred by the exclusive remedy of California's workers' compensation law.[2] The court can decide the motion without oral argument, Civil L. R. 7-1(b), and grants the motion. The plaintiff may file a supplement to her complaint by August 19, 2024.

## STATEMENT

The plaintiff was born in 1979, is Asian and Muslim, and describes her national origin as "Afghanistan."[3] Commex hired her on March 24, 2021, "as a full-time permanent accounting manager, office manager, [responsible for] shipping [and] receiving, and [she] also did cleaning. [She] carried many hats there. [Her] schedule was supposed to be 8:00 am to 4:00 pm, but [she] stayed late as was necessary to complete whatever had to be done, even as late as 9:00 pm. [She] worked Monday through Friday. [She] was a non-exempt employee and was told that the money wasn't there to pay for overtime hours."[4] She resigned her employment on March 23, 2023.[5]

From approximately July 2021 to March 2023, a co-worker named Andre Mosley made discriminatory comments. For example, he told the plaintiff to "go back to your … disaster country bitch. You do not belong here, go back to your village. [You] look like a[n] ugly monkey

---

[2] Mot. – ECF No. 10.

[3] Compl. – ECF No. 1 at 3, 8.

[4] *Id.* at 22; *see id.* at 22–23 (the company had a janitorial service, but they did not clean well, and after complaining without any improvement, she "just took over all the cleaning, though no one asked [her] to," sometimes spending entire Saturdays; she also planted and maintained a garden and maintained the aquarium between the every-other-week contractor visits).

[5] *Id.* at 9. The complaint is 11 pages and has attachments: (1) pages 12 to 21 are the EEOC documents; (2) pages 22 to 34 are a narrative about the plaintiff's work experiences; (3) pages 35 to 36 are an incident report to Commex about a March 15, 2023, incident involving coworker Andre Mosley; (3) page 37 is her time card showing stamping in and out of work from March 13 to March 18, 2023; (4) pages 38 to 40 are an email chain about the Mosley incident; (5) pages 41 to 42 are an email chain about a payroll discrepancy for the pay period ending March 24, 2023; (6) page 43 is a payroll record for the pay period March 20 to April 2, 2023; (7) page 44 is a payroll check dated February 24, 2023; (7) pages 45 to 53 and 55 to 56 are text messages about the work incidents; (8) page 54 is a picture of Mr. Mosley's employee folder; and (10) pages 57 to 61 are photographs of security-camera displays with sixteen screens showing different areas. The court considers the attachments under the incorporation-by-reference doctrine for context. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

ORDER – No. 23-cv-05592-LB                                  2

wearing that sc[arf] ([]referring to [the] hijab [she] wore in the holy month of Ramadan)." As a result of stress, she lost substantial weight (from 153 to 87 pounds). Mr. Mosely also "physically threatened" her and, on March 15, 2023, "loosened the bolts to [her] driver car tire."[6] She reported the harassment to her supervisor Saeid Azad in November 2021, September 2022, and March 2023. No action was taken. In fact, in response to the monkey comment, Mr. Azad smiled and said, "you do look like a monkey . . . following with a hug."[7]

On November 17, 2021, former plant manager John Lothrop "threatened to physically attack [the plaintiff]. He was protecting the employee Andre Mosely after he [Mosely] was confronted about stealing company time. John Lothrop was forcefully forced out of [the plaintiff's] office by Harkomal Sekhon (assistant plant mgr) who[] is over 6 feet tall and weighs over 250 pounds. Edward Yau (CEO) was present at the office. No action was taken."[8]

The plaintiff describes on-the-job injuries. On August 17, 2022, she sustained a back and shoulder injury when she moved a large fish aquarium from the front office. Mr. Lau was present.[9] On October 19, 2022, she suffered an ear injury (caused by coworker Lucia Campos in the front-office area) resulting from the plaintiff being hit by a kitchen cabinet.[10] On December 12, 2022, she suffered a lower-back injury when she moved "a huge monkey plant out of Edward Yau['s] (CEO) office. He was present."[11] On December 29, 2022, she struck her forehead on the pole near her office when she was lifting a heavy delivery box.[12]

---

[6] *Id.* at 4, 30–31 (loosened the lug nuts on March 15, 2023).

[7] *Id.* at 4.

[8] *Id.* at 5; *id.* at 27–28 (Mr. Lothrop weighs 300 pounds, made his right hand into a fist, and shot it toward the plaintiff, coming within an inch of her face; Mr. Sekhon pushed Mr. Lothrop out of the plaintiff's office; she then fainted; everyone yelled, "He's going to get his weapon;" the plaintiff was the only one who did not know that Mr. Lothrop had a gun; people were shouting, "lock the doors," but Mr. Lothrop had keys; Mr. Azad told the plaintiff to stay in her office with the door locked; later Mr. Lothrop came back, drunk, and hugged the plaintiff, telling her that he was sorry, he had too much to drink, and wasn't himself; by December 4, 2021, Mr. Lothrop had left Commex), 51–53 (text string with coworker Lucia about Lothrop incident).

[9] *Id.* at 5.

[10] *Id.*

[11] *Id.* (referencing attached text messages, screenshots, and pictures).

[12] *Id.* at 6.

On March 15, 2023, when the plaintiff confronted Mr. Mosely about "stealing company time," he "shout[ed] and intimidate[ed]" her.[13] She complained about this by filing an incident report stating she had the same issue with him in the past without action by upper management. She also referred to the earlier encounter with Mr. Lothrop, said that she feared for her safety, and said that she was hurt multiple times and was "told to place a bandage."[14] As a result, Mr. Yau, the CEO, said that Mr. Mosely was to be kept out of the office area when the plaintiff was present. (This is when Mr. Mosley alleged loosened the lug nuts on the plaintiff's tire.) Mr. Yau told her to file the incident report.[15] By March 21, Mr. Azad said that he would give the plaintiff anything she wanted if she would send another email saying that her earlier incident report was incorrect, that she had not taken her medication, and thus was not herself when she wrote the report. By this point, no one was supporting the plaintiff. Thus, she resigned from Commex on March 23, 2023. As she was leaving, Mr. Yau asked why she was leaving, and Mr. Sekhon told her that he didn't want her to leave.[16] In a March 23 email to Mr. Azad, the plaintiff referenced the failure of the security cameras to save events past three to five days and said that she was "[t]aking disability time off until this investigation that I am requesting is complete. I don't feel safe now that I am well aware."[17]

"On 3/24/2023[, the plaintiff's] final paycheck was withheld. Commex did not pay my final check and month end $450 was also withheld."[18] The attachments provide context. Because she worked overtime, the plaintiff asked for a raise, but Mr. Azad "wanted to cut her a separate check

---

[13] *Id.*; *see id.* at 26 (October 2021 incident where she confronted Mr. Mosley, who clocked in but was not there all day until five minutes before he clocked out; he falsely said that he was at a railroad car all day; she reminded him that he needed to clock out whenever he was gone for fifteen minutes), 28–29 (for a while, after Mr. Lothrop left and Mr. Sekhon began supervising Mr. Mosley, Mr. Mosley stopped disappearing from work, but the plaintiff found him at it again when she did "time cards at about 3:00 pm to 4:00 pm . . . and found once again that Andre was stealing time"), 45 (incident involving Mr. Mosley's not clocking out of work in January 2022).

[14] *Id.* at 35 (incident report; no action was taken; "Andre Mosley has a history of breaking all rules but no one can say a word because I was told by COMMEX Staff members that 'he was the right hand man of John Lothrop.'"). The incident apparently was on a security video. *Id.*

[15] *Id.* at 31–32.

[16] *Id.* at 32.

[17] *Id.* at 38.

[18] *Id.* at 6.

ORDER – No. 23-cv-05592-LB                                   4

instead of including any kind of raise in [her] payroll records plus $50 per month for use of [her] personal cell phone for business. When [the plaintiff] left, [she] cut the $50 check but he did not give it to [her]."[19] She includes a copy of a check for $450 dated February 24, 2023, presumably as an example of the off-payroll reimbursement for $400 for overtime and $50 for use of her personal cell phone for work.[20]

The plaintiff describes her pain.[21] She takes medication (prescribed by her doctor in January 2023) to help her sleep. She has a teary left eye as a result of hitting her head and pain in her left neck, left shoulder and upper chest, low back, left hip, and left leg, which causes her to limp. She offers to provide a Kaiser release for her medical records. She never missed work for her injuries or stress. Mr. Yau noticed her weight loss and insisted that she see a doctor. At her husband's suggestion, she bought products at GNC that have resulted in her gaining ten pounds, but she sometimes loses a little weight and gains it back. She has experienced stress her entire life, growing up in a traditional family and helping to raise six siblings, but this is the first time that stress has been debilitating and has caused her to be ill. In January 2023, she began seeing a Kaiser psychiatrist who has given her breathing exercises. She takes walks every two hours for fifteen minutes and gardens at her mom's house. "This is [her] first workers' comp claim."[22]

The plaintiff filed a charge with the California Civil Rights Department on May 1, 2023, and a charge with the EEOC "regarding the same or similar allegations" on October 3, 2023, both against Commex. On October 4, 2023, the EEOC closed the charge "based on a workshare agreement" with the California Civil Rights Department and issued a notice of the plaintiff's right to sue within ninety days.[23]

---

[19] *Id.* at 22–23.

[20] *Id.* at 44; *see id.* at 41–42 (May 1 email string about the missing $450).

[21] *Id.* at 10.

[22] *Id.* at 33.

[23] *Id.* at 14–21 (EEOC right-to-sue letter and accompanying documents); *see* EEOC Docs., Ex. A to Req. for Judicial Notice – ECF No. 32 at 4. The court can judicially notice the EEOC documents, which also are attached in part to the complaint and incorporated by reference. *Knievel*, 393 F.3d 1075, 1076 (2d Cir. 1996). Courts can judicially notice facts that are not subject to reasonable dispute. Fed. R. Evid. 201(b), (d). Those matters include administrative records. *Pujol v. McDonald*, No. 16-cv-

On October 3, 2023, the plaintiff filed her complaint with three claims. Claim one is for "Title VII discrimination" (1) based on race, national original, and religion from July 2021 through March 2023 and specifying Mr. Azad's comment that the plaintiff did "look like a little monkey," (2) based on "retaliation for engaging in protected activity" (without further explanation but presumably based on her filing the incident report), and (3) "because of [her] disability. Please refer to my Kaiser medical psychiatrist report."[24] In claim two, she claims Title VII age discrimination (construed here as an ADEA claim).[25] In claim three, she alleges Title VII harassment that forced her to resign on March 23, 2023.[26] The defendants moved to dismiss.[27] The plaintiff filed a late opposition.[28] All parties consented to magistrate-judge jurisdiction.[29] 28 U.S.C. § 636(c)(1).

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

---

04936-SI, 2017 WL 106993, at *2 (N.D. Cal. Mar. 21, 2017). "In the context of employment discrimination [claims] in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record." *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) (collecting cases and taking judicial notice of the EEOC's administrative proceedings and the agency's finding).

[24] *Id.* at 7.

[25] *Id.* at 8.

[26] *Id.* at 9.

[27] Mot. – ECF No. 10.

[28] Opp'n – ECF No. 16.

[29] Consents – ECF Nos. 3, 13.

recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the claim needs to be plausible, and not the facts themselves. . . ." *NorthBay Healthcare Group, Inc.*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of her claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. She need not plead specific legal theories so long as sufficient factual averments show that she may be entitled to some relief. *Id.* at 1041.

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

**ANALYSIS**

The issues are whether the individual defendants are subject to suit, whether the plaintiff plausibly pleaded her claims for workplace harassment under Title VII, the ADEA, and the ADA, whether she claims wage-and-hour violations, and whether she can pursue any claims for her workplace injuries. The court dismisses the federal claims against the individual defendants with prejudice, dismisses the federal claims and any state wage claims with leave to file a supplement to the complaint with additional fact allegations, and dismisses any claims for injuries as precluded by California's workers' compensation law.

**1. Individual Defendants**

The defendants moved to dismiss the federal claims against the individual defendants on the ground that she cannot sue them under the relevant statutes and did not exhaust her administrative remedies against them (and instead exhausted her remedies only against Commex).[30] The plaintiff did not oppose the motion and thus concedes it.[31] In any event, she cannot sue the individuals.

Pro se litigants are required to comply with "all applicable procedural rules." *See, e.g., Woodruff v. De Facto Barrett Daffin Frappier Treder & Weiss, LLP*, No. 21-CV-06862-SBA, 2022 WL 547114, at *2 (N.D. Cal. Jan. 10, 2022). One such rule is that the failure to oppose an argument is considered a concession of that argument. *See, e.g., Narang v. Gerber Life Ins. Co.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (collecting cases). The failure to oppose the motion is a ground to grant the motion.

A separate ground for dismissal is that Title VII, the ADEA, and the Americans with Disability Act (ADA) do not provide a cause of action for damages against supervisors or fellow employees. *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003) ("We have consistently held that Title VII does not provide a cause of action for damages against supervisors

---

[30] Mot. – ECF No. 10 at 9–10.

[31] Opp'n – ECF No. 16 at 1–3 (does not address arguments). Because the plaintiff is representing herself, the court considers her late-filed opposition. The court generally does not consider attachments to the opposition. *Johnson v. Liberty Mut. Ins.*, No. 12-CV-01851-LHK, 2013 WL 415585, at *2 (N.D. Cal. Jan. 31, 2013). Some of the documents were attached to the complaint, however.

or fellow employees."); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir. 1993) (Congress imposed liability only on employers under Title VII and the ADEA, not individuals); *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (barring suits against individuals under the ADA); *Grimes v. San Mateo Cnty. Transit Dist.*, No. C 12-06381 LB, 2013 WL 1739470, at *6–7 (N.D. Cal. Apr. 22, 2013).

As to the exhaustion issue, a plaintiff must exhaust ADEA, Title VII, and ADA claims by filing a written charge with the EEOC or a qualifying state agency. 42 U.S.C. § 12177(a) (incorporating Title VII procedures); *Scott v. Gino Morena Enters.*, 888 F.3d 1101, 1104 (9th Cir. 2018) (Title VII claims) (citing 42 U.S.C. § 2000e-5); *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1013 (N.D. Cal. 2018) (ADEA claims) (citing 29 U.S.C. § 626(d)); *Tyson v. ACRT Servs. Inc.*, No. 23-CV-01889-HSG, 2024 WL 69073, at *3 (N.D. Cal. Jan. 5, 2024) (ADA claims).

The EEOC/state-agency charge names only Commex, not the individual defendants. Generally, plaintiffs "may sue only those named in the EEOC charge because only they had an opportunity to respond to charges during the administrative proceeding." *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990). There are four exceptions: (1) when "the respondent named in the EEOC charge is a principal or agent of the unnamed party" or the named and unnamed parties are "substantially identical," (2) when "the unnamed party was involved in the acts giving rise to the Title VII claims," (3) when "the EEOC or defendants themselves should have anticipated that claimant would name those defendants in the lawsuit," and (4) when "the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC proceedings." *Gamble*, 348 F. Supp. 3d at 1018–19 (the plaintiff alleged that the defendants were part of an "integrated medical care services program," which was sufficient to come within the exceptions).

Presumably Commex is a principal. But given that there is no cause of action against the individual defendants, the court does not reach the exhaustion issue.

The plaintiff's federal claims against the individual defendants are dismissed with prejudice.

**2. Title VII**

The plaintiff did not plausibly plead a Title VII claim for a hostile workplace.[32]

The standard for evaluating Title VII claims differ depending on whether it is challenged through a motion to dismiss or motion for summary judgment. On a motion for summary judgment, courts analyze Title VII claims using a burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. Young v. Buttigieg*, No. 19-CV-01411-JCS, 2021 WL 981305, at *6 (N.D. Cal. Mar. 16, 2021) (citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010)). Under this framework, the plaintiff must present a prima facie case of discrimination; then the burden shifts to the defendant to articulate a "nondiscriminatory reason for the challenged action, and if the defendant does so, the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons are mere pretext for unlawful discrimination." *Id.* (cleaned up).

This burden-shifting framework, however, is inapplicable at the motion-to-dismiss stage. *Id.* (citing *Austin v. Univ. of Or.*, 925 F.3d 1133, 1136–37 (9th Cir. 2019)). Furthermore, "a plaintiff's allegations need not track each element of a prima facie case." *Id.* But to survive a motion to dismiss, "a plaintiff's complaint still must include sufficient, nonconclusory allegations plausibly linking the adverse action to discrimination." *Id.* (cleaned up); *see also Santiago v. DeJoy*, No. 20-CV-1571 YGR, 2020 WL 6118528, at *4 (N.D. Cal. Oct. 16, 2020) ("While plaintiff is not required to allege every fact necessary to establish a prima facie case of discrimination in the complaint, the complaint must provide fair notice of the basis for the plaintiff's claims."); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–12 (2002).

---

[32] The plaintiff does not appear to allege a disparate-treatment claim of discrimination under Title VII or the ADEA: those elements generally are that at the time of the alleged discrimination, the plaintiff (1) was a member of a protected class (Title VII) or was 40 years of age or older (ADEA), (2) was qualified and performing her job satisfactorily, (3) experienced an adverse employment action, and (4) similarly situated persons outside the protected class were treated more favorably (Title VII) or she was replaced by a substantially younger employee with equal or inferior qualifications (ADEA). *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (Title VII); *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (ADEA).

Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin. Title VII prohibits "discriminatory intimidation, ridicule, and insult" which is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993) (cleaned up); *see* 42 U.S.C. § 2000e et seq. The elements of a hostile work-environment claim are (1) "the defendants subjected [the plaintiff] to verbal or physical conduct based on [the plaintiff's protected category]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Equal Emp. Opportunity Comm'n v. Tesla, Inc.*, No. 23-CV-04984-JSC, 2024 WL 1354530, at *6 (N.D. Cal. Mar. 29, 2024) (citing *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978 (9th Cir. 2023)).

In evaluating a hostile work-environment claim, courts consider "all the circumstances, including the frequency of the allegedly discriminatory conduct, its severity, and whether it unreasonably interferes with an employee's work performance." *Surrell*, 518 F.3d at 1109; *Tesla*, 2024 WL 1354530 at *6 (citing *Sharp*, 69 F.4th at 978). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 687 (9th Cir. 2017). "Generally, a plaintiff alleging racial or national origin harassment would present facts showing that he was subjected to racial epithets in the workplace." *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002).

"Individual targeting is not required to establish a Title VII violation; it is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for the victim to do their job, take pride in their work, and desire to stay in their position." *Tesla*, 2024 WL 1354530 at *5 (citing *Sharp*, 69 F.4th at 978). The Ninth Circuit has "consistently sustained Title VII claims challenging a workplace polluted with insult and intimidation." *Id.* (quoting *Sharp*, 69 F.4th at 979). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.* (quoting *Sharp*, 69 F.4th at 979 (cleaned up)).

ORDER – No. 23-cv-05592-LB                11

Under Title VII, whether an employer is liable for a hostile work environment depends on whether the harassing employees were the plaintiff's supervisors or her co-workers. "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).

The plaintiff alleges only one episode — the remarks made by Mr. Mosely about her country, looking like a monkey, and her hijab, followed by Mr. Azad's comment and lack of action — related to her race and national origin. These allegations show an isolated incident, not an abusive working environment based on a protected category. The plaintiff alleges nothing about gender. The incident with Mr. Lothrop was related to his protecting Mr. Mosley, not about any protected category. The plaintiff's job was stressful, but the claim requires allegations about severe or pervasive conduct that altered the conditions of the plaintiff's workplace and based on a protected category. The plaintiff may file a supplement to her complaint to add fact allegations to support her claim.

### 3. Age Discrimination

Like Title VII, the ADEA allows a claim for a pervasive hostile work environment. *Kuhl v. McDonough*, No. 23-CV-05604-LJC, 2024 WL 3463350, at *9 (N.D. Cal. July 17, 2024). The plaintiff does not allege any facts about why the treatment was based on her age. In the supplemental filing, the plaintiff may add fact allegations to support her claim.

### 4. ADA Claim

The plaintiff did not plead an ADA claim but alleges that "I believe I was discriminated against because of my disability."[33] The basis for any claim thus is the same: a hostile work environment. A disability-based harassment claim is available under the ADA. *Mattioda v. Nelson*, 98 F.4th 1164, 1173–1174 (9th Cir. 2024) (claim also available under the Rehabilitation Act for federally funded programs). The plaintiff does not describe her disability or how a hostile

---

[33] Compl. – ECF No. 1 at 7.

work environment resulted from her disability. In the supplemental filing, the plaintiff may add fact allegations to support any ADA claim.

### 5. Retaliation

To state a prima facie case for retaliation, the plaintiff must establish that (1) she engaged in a protected activity, (2) she subsequently suffered an adverse employment action, and (3) there is a causal link between those two events. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

Here, the protected activity may be the incident report that the plaintiff filed about Messieurs Mosley and Lothrop. There is also a suggestion of payroll violations based on paying the plaintiff $450 for her cellphone and overtime work.[34] The fact allegations in the complaint do not plausibly establish the protected activity, the adverse employment action, or a causal link between the two. In the supplemental filing, the plaintiff must explain what happened and why it was retaliation.

Another issue is that there may be claims of retaliation under state law. *See* Cal. Lab. Code § 1102.5. The court's supplemental jurisdiction over any state claim depends on the plaintiff's pleading plausible federal claims. 28 U.S.C. § 1367(a), (c)(3) (court may decline to exercise supplemental jurisdiction when it "dismissed all claims over which it has original jurisdiction"). The court defers consideration of this issue until the plaintiff explains the facts more fully in her supplemental filing, which in turn will provide a better record for any round-two motion to dismiss.

### 6. Wage-and-Hours Claims

The plaintiff alleged that Commex withheld her final check and suggested that she worked overtime without compensation. Based on the explicit claims in the complaint, the court assumes that the plaintiff claims only violations of federal law. If the plaintiff wants to bring state wage claims, she must say so in her supplemental filing and allege facts to support the claims.

---

[34] *Id.* at 41 (email).

**7. Workplace Injuries**

The plaintiff did not oppose the motion to dismiss on any claims for workplace injuries as precluded by California's workers' compensation laws. She thus conceded the issue. In any event, in California the workers' compensation system is the only remedy for the physical injuries that the plaintiff describes. Cal. Lab. Code § 3600(a). It also bars a common-law claim for intentional infliction of emotional distress for "ordinary employer conduct that intentionally, knowingly or recklessly harms an employee." *Beronia v. Sw. Airlines Co.*, No. 22-CV-06699-AMO, 2024 WL 1182862, at *11 (N.D. Cal. Mar. 19, 2024) (quoting *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 714 (1994)). Again, the plaintiff's complaint suggests that she intended to bring only federal claims. But because she is proceeding pro se, the court reviews the standards for completeness.

## CONCLUSION

The claims against the individual defendants are dismissed with prejudice. The plaintiff cannot bring claims for her physical injuries because they are precluded by California's workers' compensation laws. Otherwise, the dismissal of the remaining claims is without prejudice. The plaintiff does not need to file a new complaint and instead should file a supplement to her existing complaint alleging all facts about (1) any hostile workplace environment based on a protected category (race, national original, religion, gender, age, and disability) and (2) what happened that allegedly was retaliation. That supplemental filing is due by August 19, 2024, and need not repeat anything in the existing complaint. In evaluating any renewed motion to dismiss, the court will consider the existing complaint and attachments at ECF No. 1 and any new facts in the plaintiff's supplemental filing. Another issue is that if the plaintiff does not think she can plausibly plead federal claims, then she need not file a supplement by August 19. If she elects this course, then the court will dismiss the federal claims without prejudice to the plaintiff's filing any state claims in state court.

**IT IS SO ORDERED.**

Dated: July 31, 2024

LAUREL BEELER
United States Magistrate Judge